UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
JAMES J. CALDERON,

                              Plaintiff,

   -v-                                            9:09-CV-1001

MICHAEL NEALON and JOHN DOE(s),

                              Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                              OF COUNSEL:

JAMES J. CALDERON
Plaintiff, Pro Se
96-A-5195
Franklin Correctional Facility
P.O. Box 10
Malone, NY 12953

PHILLIPS, LYTLE LAW FIRM             MARC H. GOLDBERG, ESQ.
Attorneys for the Defendants              WILLIAM D. CHRIST, ESQ.
Omni Plaza
30 South Pearl Street
Albany, NY 12207

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

## I. INTRODUCTION

       Plaintiff James Calderon ("plaintiff" or "Calderon"), a New York state prison inmate proceeding pro se and in forma pauperis, commenced this action on September 2, 2009, pursuant to 42 U.S.C. § 1983 and alleges that defendants violated his constitutional rights. Plaintiff asserts that defendants used excessive force in violation of his Eighth Amendment

right to be free from cruel and unusual punishment. Plaintiff seeks monetary relief. On August 4, 2010, after the close of discovery, defendants moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Defendants argue that Calderon failed to exhaust his administrative remedies, the force used was reasonable, and that they are entitled to qualified immunity.

Plaintiff opposes the motion but fails to provide a memorandum of law outlining his legal arguments. Instead, plaintiff's response contains only a numbered response to defendants' Rule 7.1 statement—admitting or denying defendants' asserted facts—and five exhibits to support his claim. Defendants argue that this is an inadequate response and urge the court to deem admitted the assertions set forth in their statement of facts pursuant to Local Rule 7.1(a)(3). Because Calderon has sufficiently disputed defendants' statement of facts, defendants' assertions cannot be deemed admitted. However, plaintiff's failure to submit a memorandum of law countering defendants' legal arguments lightens defendants' burden regarding the motion such that they need only show that the motion has "facial merit." Cont'l Ins. Co. v. Coyne Int'l Enter. Corp., 700 F. Supp. 2d 207, 213 n.6 (N.D.N.Y. 2010) (Suddaby, J.).

## II. FACTUAL BACKGROUND

On June 6, 2009, plaintiff—who was on parole at the time—spent a considerable portion of the day drinking alcoholic beverages with his brother. At approximately 8:30pm that evening, the Scotia Police Department responded to a report of a suspicious person wearing shorts and yelling obscenities. Upon arrival, police officers located plaintiff and his brother walking along a street. After identifying plaintiff, the officers attempted to place him in custody as there was an outstanding bench warrant for his arrest. The officers handcuffed

Calderon and attempted to place him in the back of the patrol car.  However, plaintiff reportedly became uncooperative, and the officers subdued him with a taser.  As a result of this incident, plaintiff was charged with resisting arrest and false personation.[1]  Plaintiff was subsequently transported to Schenectady County Jail and placed in a holding cell in the main booking area.  What occurred next is in dispute.

### A. **Calderon's Version of the Incident**

Plaintiff admits that he was intoxicated when he arrived at the Schenectady County Jail but denies being out of control or incoherent.  Calderon also acknowledges that he was "loud" and called another inmate a "nigger" as that inmate was being escorted through the booking area.  Calderon maintains that this was the only "belligerent" act or comment he made while in the holding cell.  Plaintiff initiated a conversation with a female who was being housed in the holding cell across from his and attempted to flirt with or console her as she was visibly upset.  This exchange between plaintiff and the female inmate bothered the jail staff, and Calderon was soon escorted to a "strip-frisk" room in the rear of the booking area by defendant Nealon, who was the on-duty sergeant, and at least three other officers.  Once inside this room, defendant Nealon ordered plaintiff to "assume the position," and Calderon complied by placing his hands flat against the wall and spreading his feet apart while facing the wall.  Without provocation, defendant Nealon then reached under plaintiff's right arm and sprayed pepper spray directly into his face.  Nealon then sprayed directly up the right pant-leg of plaintiff's shorts, covering his genitals in pepper spray.

---

[1] Calderon denies being uncooperative and eventually pled guilty only to false personation, which he was charged with because he allegedly provided a false name to the officers.

- 3 -

Defendants then turned plaintiff around, pulled his T-shirt over his face, and propelled him into a wall. Calderon's head struck the wall, and he sustained a one-inch "gash" on his forehead that bled profusely. Plaintiff was then escorted to an eyewash station located in the booking area and then brought to the medical department where he received treatment for his head laceration. Plaintiff denies ever being taken to the Special Housing Unit ("SHU") on the fourth floor of the facility or being washed down in a shower. Calderon maintains that he was cooperative throughout the entire booking process and adamantly denies making any threatening movements to necessitate the use of force against him.

### B. Defendants' Version of the Incident

Defendants assert that Calderon was highly intoxicated and belligerent while being housed in the holding cell. In addition to "shaking" the bars of his cell while yelling racial slurs to another inmate, Calderon called the female inmate in the opposite cell a "crack whore." Plaintiff ignored several orders to stop yelling. Plaintiff was then escorted to the strip-frisk room and ordered to change out of his street clothes and into the jail uniform. Plaintiff became uncooperative and repeatedly questioned the officers' orders. Calderon then aggressively "lunged" at defendant Nealon, who responded by spraying plaintiff with pepper spray once in the face to subdue him. Plaintiff was then handcuffed and brought to the SHU on the fourth floor of the jail, where he was decontaminated in a shower while still wearing his street clothes. Plaintiff was then led out of the shower area, complained that he could not see, and "inexplicitly" ran head-first into a wall on his own account. Plaintiff then laughed and stated, "oh, that is the wall." Calderon was then brought to the medical department for evaluation and treatment. Defendants deny using any excessive force or propelling Calderon into the wall.

As a result of this incident, plaintiff was charged with several rule violations. At the subsequent disciplinary hearing, plaintiff was found guilty and sentenced to 30 days in "keep-lock" status.

## III. DISCUSSION

### A. Summary Judgment Standard

The entry of summary judgment is warranted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 2509–10 (1986). A fact is "material" for purposes of this inquiry if it "might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248, 106 S. Ct. at 2510; see also Jeffreys v. City of New York, 426 F.3d 549, 553 (2d Cir. 2005). A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248, 106 S. Ct. at 2510.

When summary judgment is sought, the moving party bears the initial burden of demonstrating that there is no genuine issue of material fact to be decided with respect to any essential element of the claim. Anderson, 477 U.S. at 250 n.4, 106 S. Ct. at 2511 n.4. The failure to meet this burden warrants denial of the motion. Id. In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material issue of fact for trial. Id. at 250, 106 S. Ct. at 2511; Fed. R. Civ. P. 56(e).

When deciding a summary judgment motion, a court must resolve any ambiguities and draw all inferences from the facts in a light most favorable to the nonmoving party.

Jeffreys, 426 F.3d at 553.  Summary judgment is inappropriate where "review of the record reveals sufficient evidence for a rational trier of fact to find in the [non-movant's] favor." Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002) (citation omitted); see also Anderson, 477 U.S. at 250, 106 S. Ct. at 2511 (summary judgment is appropriate only when "there can be but one reasonable conclusion as to the verdict").

### B.  Exhaustion of Remedies

Pursuant to the Prison Litigation Reform Act of 1995 ("PLRA"), an inmate is required to exhaust all administrative remedies before bringing an action regarding prison conditions.  42 U.S.C. § 1997e(a).  This exhaustion requirement applies to all suits concerning prison life, including those alleging excessive force.  Porter v. Nussle, 534 U.S. 516, 532, 122 S. Ct. 983, 992 (2002).  A plaintiff must exhaust all available remedies even if the prison grievance system cannot provide the specific type of relief sought, i.e. money damages.  Id. at 524, 122 S. Ct. at 988; Booth v. Churner, 532 U.S. 731, 741, 121 S. Ct. 1819, 1825 (2001).

In order to satisfy the exhaustion requirement, a plaintiff must complete the administrative review process in accordance with the applicable procedural rules of the facility, appealing decisions to the highest administrative level provided for in the process before bringing suit in federal court.  Neal v. Goord, 267 F.3d 116, 122 (2d Cir. 2001), overruled on other grounds, Porter, 534 U.S. 516, 122 S. Ct. 983.  Informal complaints to prison officials do not constitute proper exhaustion.  Macias v. Zenk, 495 F.3d 37, 44 (2d Cir. 2007) (citing Woodford v. Ngo, 548 U.S. 81, 95, 126 S. Ct. 2378, 2388 (2006), which overruled prior Second Circuit case law allowing for less than "proper exhaustion").  Putting prison officials on notice of the underlying substantive allegations through informal channels

is an insufficient substitute for procedurally exhausting all available administrative remedies. See id. at 43–44 (holding that a pro se inmate did not satisfy the PLRA's exhaustion requirement by filing two administrative tort claims and numerous informal complaints).  This is so because "'the benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance' and 'the prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules.'" Id. at 44 (quoting Woodford, 548 U.S. at 95, 126 S. Ct. at 2388).

The Second Circuit has held that although the PLRA requires proper exhaustion, certain exceptions apply. Ruggiero v. County of Orange, 467 F.3d 170, 175 (2d Cir. 2006). The three categories of exceptions that excuse mandatory exhaustion include where:  (1) administrative remedies are not available; (2) defendants have waived the affirmative defense of failure to exhaust or acted in such a manner as to estop them from asserting the defense; and (3) "special circumstances" justify the plaintiff's failure to exhaust, such as a "reasonable misunderstanding" of the grievance procedures. Id.  Grievance procedures may be deemed unavailable "where plaintiff is unaware of the grievance procedures or did not understand [them] or where defendants' behavior prevents plaintiff from seeking administrative remedies." Murrary v. Palmer, No. 9:03-CV-1010, 2010 WL 1235591, at *5 (N.D.N.Y. Mar. 31, 2010) (Suddaby, J.).

In June 2009 the Schenectady County Jail had an inmate grievance system in place. See LaBrake Aff., Dkt. No. 43–6, ¶¶ 5–9.  This system provided for a written response by the grievance coordinator within five business days after receiving an inmate's grievance. Id. at ¶ 7.  The inmate would then have two business days to appeal the grievance coordinator's determination. Id. at ¶ 8.  Administrative remedies were therefore available to

plaintiff. Defendants maintain, however, that Calderon never filed a formal grievance regarding the June 6, 2009, incident, nor even lodged an informal complaint with jail officials. Donn LaBrake, who was the Inmate Grievance Coordinator at the Schenectady County Jail in June 2009, could not locate any grievance filed by plaintiff among the jail's records. Id. at ¶¶ 1, 11–12.

Plaintiff asserts that he filed a grievance regarding this incident on June 11, 2009, while he was still lodged at the Schenectady County Jail but never received a "result or disposition." Compl. at 2. Indeed, attached to his complaint is a copy of a three-page handwritten "Grievance" that Calderon authored on June 10, 2009. Id. at 8–10. However, there are no markings, signatures, or stamps anywhere on this document to indicate that it was filed with or received by jail officials. Id. Moreover, this document does not appear to be an official inmate grievance form as was used in the facility at the time. See LaBrake Aff., ¶ 9 ("It is the policy of the jail to use both an inmate grievance form and an investigation report form as provided by the New York State Commission of Correction."). Instead, plaintiff seems to have written "Grievance Form" across the top of unofficial lined notebook paper. See Compl. at 8. Plaintiff claims that he submitted his grievance "through the facility mail to be properly processed and delivered to the grievance commitee [sic]." Dkt. No. 44, ¶ 21. It is undisputed that plaintiff did not file an appeal related to this grievance. When asked why he did not appeal, plaintiff explained: "I didn't feel there was any need to appeal it because I felt that this was an occurrence of their device. This is what they wanted to happen. So appeal it for what, you know?" Goldberg Decl., Dkt. No. 43–1, Ex. C, at 160.

On June 17, 2009, plaintiff's grandfather, Donald Birch, filed a complaint with the Schenectady County Sheriff's Office concerning the alleged use of excessive force on

- 8 -

plaintiff.  Dkt. No. 44, Ex. B.  This complaint prompted an internal investigation by a Captain Martin, who found that the actions taken by the involved staff were justified and "per procedure."  Id.  As a result of his grandfather's complaint—not as a result of any grievance he filed—plaintiff met with Captain Martin and discussed the allegations.  Compl. at 3.  During this conversation, plaintiff was advised that "if there was to be a final disposition in the matter, [he] would not be notified."  Id.  However, plaintiff does not argue that he failed to actively pursue his grievance because of this conversation with Captain Martin or because he felt officials received sufficient notice of his allegations via his grandfather's complaint.

In fact, as noted above, plaintiff does not provide any explanation or legal argument as to why he failed to properly exhaust his available administrative remedies—he merely asserts that he filed a grievance that was never responded to and did not appeal because he believed such would be futile.  There are no allegations or suggestions that Calderon was unaware of or misunderstood the grievance procedures in place at the Schenectady County Jail.  Moreover, plaintiff does not allege that the defendants prevented him from pursuing administrative remedies, and he does not identify any special circumstances justifying his failure to exhaust.  Given these facts, plaintiff's failure to exhaust his administrative remedies cannot be excused.  See Yeldon v. Ekpe, 159 F. App'x 314, 315 (2d Cir. 2005) (summary order) (holding that plaintiff failed to exhaust his administrative remedies where he claimed to have filed a grievance but the facility did not have any records of such a grievance, and plaintiff did not file an appeal because he was told an appeal would be futile); Stewart v. Howard, No. 9:09-CV-69, 2010 WL 3907137, at *2 (N.D.N.Y. Sept. 30, 2010) (Sharpe, J.) ("[P]erceived futility of the process does not render the grievance system unavailable.") (internal quotation marks omitted).

Accordingly, defendants' motion for summary judgment will be granted based on plaintiff's failure to exhaust administrative remedies as required by the PLRA.

## IV. CONCLUSION

Accordingly, it is

ORDERED that

1. Defendants' motion for summary judgment is GRANTED; and

2. Plaintiff's complaint is DISMISSED without prejudice.

The Clerk of the Court is directed to enter judgment accordingly.

IT IS SO ORDERED.

United States District Judge

Dated:   February 1, 2011
         Utica, New York.